UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ERNEST GREEN,

                Plaintiff,                Case No. 1:10-cv-39

v.                                              Honorable Paul L. Maloney

SUSAN RONDEAU et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The action originally was filed in the Eastern District of Michigan and was transferred to this Court. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.   Factual allegations

Plaintiff Ernest Green presently is incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility. He sues his former parole agent Susan Rondeau; MDOC Administrative Law Judge Gary M. Kasenow; MDOC Interstate Compact/Detainer Coordinator Cynthia Johnson; and the (unknown) Bakersfield County, California Sheriff and (unknown) Utah and Nebraska law enforcement officials.

Plaintiff complains that he was issued a parole certificate from the Michigan Parole Board on January 14, 2005, which stated that parole would continue for 24 months. Plaintiff was advised that he could go to Illinois, where he was to serve an 18-month detainer. After 45 days, in March 2005, the Illinois Parole Board released Plaintiff and advised him that the MDOC had authorized him to leave Illinois and go to California to reunite with his wife and family. Plaintiff obtained employment in California as a finish carpenter and purchased a home with his wife in Santa Maria, California.

In October 2005, during a routine traffic stop, a California police officer advised Plaintiff that the State of Michigan had issued an arrest warrant for absconding from justice. Plaintiff's wife subsequently was terminated from her employment with the Kalinga Department of Corrections for harboring a fugitive. Plaintiff was sent back to Cassopolis, Michigan and assigned parole agent Defendant Susan Rondeau. In April 2006, Defendant Rondeau authorized Plaintiff to return to his family in Santa Maria, California, and he was assigned a California parole agent. The California parole agent advised that Plaintiff did not need to report to the agent; the agent would visit his home once per month. In addition, Plaintiff was told that his parole would expire in three

months. In July 2006, Plaintiff was advised by the California agent that he was no longer on parole and that Defendant Rondeau would be sending papers to confirm that fact. Plaintiff called Defendant Rondeau, who confirmed that he was off parole.

In November 2006, Plaintiff was arrested in Utah for delivery of drugs and was incarcerated for 30 days and sentenced to 3 years of non-reporting probation in Utah. Plaintiff was advised by the Utah parole office that the MDOC had placed a hold on Plaintiff but would not be requesting Plaintiff's transfer to Michigan. Plaintiff thereafter was released.

In December 2006, Plaintiff was arrested in Nebraska for transporting marijuana and was incarcerated for two weeks. Nebraska officials advised Plaintiff that both Utah and Michigan had warrants for his arrest, and Plaintiff was released to the United States Marshals Service for transport to Salt Lake City, Utah. Plaintiff was told that Michigan did not want him transferred to Michigan. Plaintiff was then transferred to the county jail in Riverside, California. When he was released from the Riverside County Jail in July 2007, Plaintiff was again advised that Michigan did not want him transferred back. Plaintiff believed at that time that his Michigan parole had expired in January 2007. He also believed that Michigan had continuously waived any interest in having Plaintiff returned to the state. However, in November 2008, California law enforcement officials were instructed by the MDOC to transport Plaintiff back to Michigan for parole violations.

Plaintiff contends that he was denied his right to due process when he was denied a preliminary hearing on the parole revocation without a proper waiver of the hearing. He also contends that he was denied due process because the warrant on which he was arrested became invalid when Michigan waived its alleged parole violations, thereby depriving Michigan of jurisdiction. Further, he alleges that his due process rights were violated by Defendant Cynthia

Johnson's false testimony that none of the law enforcement agencies allowed her sufficient time to have Plaintiff transported back to Michigan and by her withholding from the defense the documents provided to those agencies. In addition, Plaintiff alleges that his rights were violated when no evidence was produced that Plaintiff's parole was extended beyond August 3, 2007, at which point Michigan lost jurisdiction. Plaintiff also alleges that he was denied his right to the effective assistance of counsel by counsel's failure to investigate each of the other deprivations.

For relief, Plaintiff seeks a declaratory judgment stating that Michigan waived jurisdiction over Plaintiff and the subject matter of the alleged parole violations and that his continued incarceration violates due process. He also seeks injunctive relief in the form of a new parole revocation hearing at which it is recognized that the parole term had expired and the MDOC had no authority to revoke parole. In addition, he seeks compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.

Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Supreme Court has recognized a parolee's due process right to adequate procedures leading up to the revocation of parole. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 489 (1972). A civil rights action, however, is an inappropriate vehicle by which to challenge revocation of parole. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that when a state prisoner is challenging the very fact or duration of his physical imprisonment, his sole federal remedy is by writ of habeas corpus. 411 U.S. at 500. Despite the literal breadth of § 1983, habeas corpus is the "exclusive remedy" for attacking the validity of state confinement. 411 U.S. at 489. Otherwise, the Court reasoned, Congress's carefully crafted habeas structure, requiring exhaustion of state remedies by state prisoners, would be undermined by permitting state prisoners to invoke

civil rights jurisdiction, which does not require exhaustion. Inasmuch as Congress had amended the habeas statute in 1948 to require exhaustion of state remedies, the *Preiser* Court concluded that it "would wholly frustrate explicit congressional intent to hold that the [challengers] could evade this requirement by the simple expedient of putting a different label on their pleadings." *Id.* at 489-490.

The *Preiser* Court dealt with a civil rights action seeking a restoration of state good-time credits. However, the courts have applied its reasoning to invalidate any civil rights action that directly or by implication challenges the fact or duration of confinement. Subsequently, the Supreme Court applied the *Preiser* doctrine to preclude a civil rights action for damages alleging malicious prosecution, even though the complaint did not explicitly seek release from custody. *Heck v. Humphrey*, 512 U.S. 477 (1994). Under the holding in *Heck*, any civil rights action calling into question the lawfulness of confinement must be preceded by a judicial finding, in a separate habeas corpus action, that the conviction or confinement was unconstitutional. 512 U.S. at 486-87; *see also*, *Edwards v. Balisok*, 117 S. Ct. 1584 (1997) (holding that a claim for declaratory relief and monetary damages based on allegations that unconstitutional procedures had been followed resulting in a loss of good-time credits was not cognizable under section 1983, as the prisoner's allegations necessarily implied the invalidity of the punishment). The federal courts unanimously hold that a state prisoner's attack on a decision to revoke parole must be brought by habeas corpus action, after exhaustion of state remedies. *See Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 288 (6th Cir. 2003); *Miskowski v. Martin*, 57 F. App'x 246, 248 (6th Cir. 2003); *White v. Gittens*, 121 F.3d 803, 806 (1st Cir. 1997); *Brewer v. Dahlberg*, 942 F.2d 328 (6th Cir. 1991); *Hopkins v. Kerns*, No. 89-1962, 1990 WL 40076 (6th Cir. Apr. 9, 1990); *Thomas v. Torres*, 717 F.2d 248 (5th Cir. 1983); *Strader v. Troy*, 571 F.2d 1263, 1269 (4th Cir. 1978).

Plaintiff argues that his claim is not barred by *Heck*, 512 U.S. 477. In support of his argument, he cites *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). In *Dotson*, the Supreme Court considered a complaint alleging that the plaintiff's due process rights were violated by unfair procedures at his parole hearing. The plaintiff sought a new hearing and did not demand immediate release or otherwise directly challenge the result of the prior parole hearing. The Court concluded that, because the plaintiff sought only a new hearing to consider parole – not the immediate grant of parole – the action did not necessarily challenge the duration of his sentence. The Court held that "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* Plaintiff argues that, because he does not seek to overturn the result of his revocation proceeding, but merely seeks a new parole revocation proceeding, his claim does not necessarily imply the invalidity of his conviction.

The present case falls squarely within the *Heck* bar, as Plaintiff expressly challenges the revocation of his parole. Although Plaintiff requests a new revocation hearing as one part of his relief, he first demands that this Court declare (1) that Michigan had no jurisdiction or authority over the subject matter of the parole violations as Plaintiff's parole already had expired, and (2) that he is in custody beyond the term of his sentence. Such demands directly challenge the validity of Plaintiff's confinement. Further, Plaintiff demands that, at any new revocation proceeding, the MDOC be ordered to recognize that it no longer had jurisdiction to hold Plaintiff. Like the request for declaratory relief, the requested injunction necessarily implies the invalidity of Plaintiff's sentence. Finally, even in his damages claim, Plaintiff seeks compensation for the injuries he has

suffered from proceedings and imprisonment beyond what the law authorizes. In sum, Plaintiff's claims clearly imply the invalidity of his continued confinement. Plaintiff's complaint must therefore be dismissed for failure to state a claim upon which relief can be granted.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: __February 10, 2010__         /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     Chief United States District Judge